UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| IN RE: WENDELL ELZA, | ) | |
| | ) | Civil Action No. 6:05-346-DCR |
| | ) | Bankr. Case No. 04-61321-JMS |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |

**AND**

| | | |
|---|---|---|
| KIMBERLY ELZA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:05-372-DCR |
| | ) | Bankr. Case No. 04-61321-JMS |
| V. | ) | Adv. Pro. No. 05-6022-JMS |
| | ) | |
| MAXIE E. HIGGASON, JR., and | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Both Civil Action No. 6: 05-346 and 6: 05-372 are before this Court for consideration of Motions to Withdraw Reference stemming from the same underlying action, Civil Action No. 6: 01-504, *United States v. Denham & Lewis, et al*. Both motions have been filed by the United States, and both concern a motion made by the United States in the bankruptcy proceeding to Compel Turn-Over of Rental Income. [Bankruptcy Docket #49] Given their substantially similar nature, the Court will consider both cases together.

Because the Court finds that the application of the Court's Order setting aside the transfers from Mr. Elza to the Wendell Elza Family Limited Partnership and its effect are substantially related to the bankruptcy proceeding already in the Bankruptcy Court, the Motions to Withdraw Reference will be denied. [Civil Action No. 6: 05-346, Docket No. 1], [Civil Action No. 6: 05-372, Docket No. 1]

**I.    BACKGROUND**

These actions stem from the initial case of *United States v. Denham & Lewis*, *et al.* Through this earlier litigation, Mr. Elza and several of his alter-egos, including Denham & Lewis Coal Company were found to have committed violations of the False Claims Act, 31 U.S.C. §3729. These verdicts resulted in a cumulative judgment of $2,914,589.39 against Mr. Elza, Denham & Lewis and others.

After eight months, the United States was unable to collect any portion of the judgment from either Mr. Elza or Denham & Lewis. The United States then filed a number of motions in an attempt to collect, including a motion to enforce judgment regarding the assets of Ruby Coal Company as an additional alter-ego of Mr. Elza, a motion to set aside fraudulent transfers to the Wendell Elza Family Limited Partnership (WELFP), and a motion for a garnishment disposition order to American Express Financial Advisors and American Funds Service Company. [Opinion and Order, 08/04/04] In the Order, this Court found the transfer of assets to WELFP to be fraudulent, voided those transfers, and determined them subject to garnishment and levy. *Id.*

Less than three weeks later, on August 19, 2004, Mr. Elza and several of his alter-egos, including Denham & Lewis and Ruby Coal Company filed for Chapter 7 bankruptcy protection.

Although the debtor was receiving rental income from property he owned with his wife, he failed to list these interests in either Schedule B or Schedule I of his bankruptcy schedules, nor did he claim any exemption under Schedule C.  [Civil Action No. 6:05-372, Docket No. 1]

On April 27, 2005, the United States filed a motion to compel the Debtor to turn over these interests to the Bankruptcy Trustee, which would allow the United States to collect on its judgment pursuant to the Trustee's disbursement of the bankruptcy assets.  *Id.*  Mr. Elza filed an objection, claiming that he and his wife as tenants-in-the-entirety owned the property in question, and therefore, it was not subject to being turned-over.  [Bankr. Dkt. No. 49] Mrs. Elza then filed an adversary proceeding in bankruptcy court, No. 05-6022, seeking a declaration that the properties in question were tenancies-by-the-entirety.

In both Mr. Elza's original bankruptcy proceeding and Mrs. Elza's adversary proceeding, the United States filed these Motions to Withdraw Reference.  [Civil Action No. 6: 05-346 and 6:05-372, Docket No. 1]

**II.     ANALYSIS**

The United States argues that this Court should withdraw the reference of both matters from the Bankruptcy Court because the determination of whether the property should be turned over to the Bankruptcy Trustee will depend on interpretation of this Court's August 4, 2004, Order and review of the Federal Debt Collection Procedure Act, 28 U.S.C. §3001.  The Elzas object, arguing that because the Motion to Turn Over is a core proceeding, it is properly before the Bankruptcy Court.

In determining whether to withdraw a reference to the Bankruptcy Court, this Court must guided by the language of Section 157(d) of Title 28 of the United States Code. This section provides that:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The statute provides two different standards that district courts should use in evaluating whether a case should be withdrawn. The second sentence of Section 157(d) outlines those situations in which a district court *must* withdraw a case (mandatory withdrawal), whereas the first sentence addresses situations in which the court *may* exercise its discretion (discretionary withdrawal). Any inquiry into whether to withdraw a case must first determine whether withdrawal is mandatory, and if not, whether judicial economy is served by exercising discretion to withdraw the reference.

### A.     Mandatory Withdrawal

The plain language of the second sentence of Section 157(d) requires that the reference be withdrawn if the proceeding requires consideration of both the bankruptcy title and "other laws . . . regulating organizations or activities affecting interstate commerce." Courts are admonished to construe this second sentence narrowly. *1-3 Collier on Bankruptcy - 15th Edition Revised P 3.04, citing 130 Cong. Rec. H1850* (daily ed. March 21, 1984).

As most issues which arise in cases that have been referred to bankruptcy court will necessarily require consideration of the bankruptcy title, the first part of the mandatory

withdrawal test is rarely at issue ("requires consideration of the bankruptcy title"). Most cases, then, will turn on whether consideration of other laws which regulate organizations or activities which themselves affect interstate commerce is required. In the legislative history, Congress has suggested some statutes which meet this standard. For example, Congress has suggested this was meant to include laws such as the National Labor Relations Act and the Securities and Exchange Act. *Id.*

Following the admonition that the sentence be narrowly construed, courts have generally denied withdrawal unless consideration of the other statute is "necessary for the resolution of a case or proceeding." *In re White Motor Corp*, 42 B.R. 693, 703 (N.D. Ohio 1984). In that case, the district court denied withdrawal even though the case required the bankruptcy court to determine whether the Employee Retirement Income Security Act of 1974 (ERISA) permitted an employer to terminate certain pension plans under their reorganization plan. In a similar vein, other courts construing this language have determined that mandatory withdrawal is only required where "substantial and material consideration" of non-Title 11 statutes will be necessary. *See e.g. Michigan Milk Producers Assoc. v. Hunter*, 46 B.R. 214 (N.D. Ohio 1985); *see also Laborers' Pension Trust Fund-Detroit & Vicinity v. Kiefer*, 276 B.R. 196 (E.D. Mich. 2002); *In re Ionosphere Clubs*, 922 F.2d 984 (2d Cir. 1990).

The United States has suggested that because this action requires consideration of the Federal Debt Collection Procedure Act (FDCPA) and this Court's own order, the Court must withdraw the reference. [Civil Action No. 6: 05-346, Docket No. 1] However, the United States provides no legal authority to support an assumption that the FDCPA is one of the "other laws

. . . regulating organizations" to which the mandatory withdrawal provision of Section 157(d) should be applied. For his part, Mr. Elza denies that the FDCPA is even implicated, arguing that state law should serve to determine his wife's interest in the contested property. *Id.*

This Court need not settle this particular argument at this time, as even a plain reading of both the mandatory withdrawal provision and the terms of FDCPA clearly indicate only minimal treatment of the FDCPA will be required, such that mandatory withdrawal is not implicated. As stated in *In re White Motor Corp*, mandatory withdrawal is appropriate only "if this Court can make an affirmative determination that resolution of the claims will require *substantial and material consideration* of those non-Code statutes." *See In re White Motor Corp*, 42 B.R. 693, 705 (emphasis added). It is not clear that the FDCPA "regulates organizations affecting interstate commerce" as it is designed to provide a uniform federal debt collection procedure for federal loans and obligations incurred by private parties. *9 Am Jur 2d BANKRUPTCY § 32*. Furthermore, to the extent this case turns on a determination of the effects of a finding that certain property was fraudulently conveyed, that determination is one which is clearly within the bailiwick of the bankruptcy court. *see infra*. Mandatory withdrawal, therefore, is not required.

### B. Core / Non-Core Proceeding

Having determined that withdrawal of the reference is not mandatory, the Court must determine whether to exercise its discretion to withdraw the reference. Where the withdrawal of a case from Bankruptcy Court is not mandatory under the second sentence of 28 U.S.C.

§157(d), the first sentence provides that a district court *may* withdraw . . . any case or proceeding referred under this section . . . *for cause* shown. (emphasis added).

The statute does not provide a definition of what constitutes sufficient cause. However, in making this determination, courts have considered a number of factors, such as efficiency, allocation of judicial resources and relative expertise. Weighing these important factors allows the course to determine whether cause exists. *Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095 (2nd Cir. 1993)

The best method for weighing these and other factors is the determination of core and non-core proceeding, as the Second Circuit applied in *Orion Pictures*. *Id.* Title 28 of the United States Code, Section157, provides a non-exhaustive list of proceedings that Congress had determined are core proceedings. This list constitutes a congressional determination as to those matters most properly heard in a bankruptcy court, where the judges are more familiar with the intricacies of Title 11. In contrast, section 157 also provides that bankruptcy courts may hear other matters (non-core), but that those decisions are subject to *de novo* review by the district court. *Id*.

As the Second Circuit noted in *Orion Pictures*, because non-core proceedings must be reviewed *de novo*, hearing these matters in bankruptcy court may generate unnecessary costs. By the same token, however, on core matters the bankruptcy court will generally be more familiar with the facts and the issues of the particular case, and the court will be more familiar with the Title 11. *Orion Pictures*, 4 F.3d at 1101. District courts have generally been unreceptive to motions to withdraw, holding that courts should also consider the goals of

preventing forum shopping and promoting the uniformity in bankruptcy administration. *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985).

The primary issue in the two disputes before this Court are what effect, if any, the voiding of a pre-bankruptcy transfer as a fraudulent conveyance has on the ownership interest of a spouse as a tenant-in-the-entirety. The United States argues that the initial conveyance destroys the unity of ownership even though that transfer was later avoided by this Court. In response, Mr. Elza argues that because the transfer was effectively nullified, the legal effect is to restore title to its pre-transfer state.

As noted above, section 157(b) provides a non-exhaustive list of proceedings that are to be considered "core proceedings." Subsection (2)(H) details one such specific proceeding: "to determine, avoid, or recover fraudulent conveyances." While that is not the exact issue in this case, it strongly suggests that Congress considered bankruptcy courts to be a proper venue to determine whether a particular conveyance was fraudulent. As a part of a larger bankruptcy proceeding, this would necessarily entail a determination on the status of property once a conveyance had been avoided. *See Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 60 (1989) (Congress drew a [] distinction between "core" and "non-core" proceedings and classified fraudulent conveyance actions as core proceedings triable by bankruptcy judges).

It is the judgment of this Court that the bankruptcy court is the proper venue for this dispute. A determination regarding whether the property in dispute should still be considered as an entirety interest is properly before the bankruptcy court. The Court has determined that

withdrawal is not mandatory under the statute. Furthermore, the United States has failed to show cause as to why the Court should exercise its discretion to withdraw.

### III. CONCLUSION

For the reasons discussed herein, it is **ORDERED** that, in Civil Action Nos. 6: 05-346 and 6: 05-372, the United States' Motion to Withdraw Reference is **DENIED**.

This 8th day of November, 2005.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge